**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
JAMES STEBBINS, DANIEL CLARK,    :
and BRIAN POTHIER, on behalf of  :
themselves and all others        :
similarly situated,              :
                                 :
          Plaintiffs,            :      Civil No. 3:16-cv-992(AWT)
                                 :
v.                               :
                                 :
S&P OYSTER CO. d/b/a S&P OYSTER  :
COMPANY, PETER NIKOLAISEN, and   :
CATHLEEN HOLLAND,                :
                                 :
          Defendants.            :
------------------------------- x
```

<u>**RULING ON PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**</u>

Pursuant to Section 216(b) of the Fair Labor Standards Act, plaintiffs James Stebbins, Daniel Clark, and Brian Pothier move to conditionally certify a collective action on behalf of all persons who were employed by S&P Oyster Co. ("S&P") at any time since June 20, 2013 as a "server."  The plaintiffs contend that the defendants improperly applied a tip credit towards the minimum hourly wage rate paid to S&P employees working as servers.  For the reasons set forth below, the motion is being denied.

**I.   FACTUAL BACKGROUND**

S&P is a Connecticut corporation that owns and operates a restaurant in Mystic, Connecticut.  Defendants Cathleen Holland and Peter Nikolaisen own and operate S&P.  The plaintiffs are

1

current or former employees of S&P.  Plaintiff James Stebbins
was employed by S&P on three separate occasions, most recently
as a server and bartender from approximately October 2014 to May
2016.  Plaintiff Daniel Clark was employed by S&P as a server
from December 2010 to May 2016.  Plaintiff Brian Pothier was
employed by S&P as a server from May 2015 to March 2016.  In
addition to the named plaintiffs, one additional tipped
employee, James Simmons, has opted in.

The plaintiffs allege that S&P failed to pay servers and
other similarly situated non-exempt employees (collectively,
"S&P employees") the statutorily required overtime rate for
weekly hours worked over 40.  Under the Fair Labor Standards Act
of 1938, 29 U.S.C. § 201 et seq.("FLSA"), employers are
generally required to pay employees a wage that is at least the
statutory minimum wage.  See 29 U.S.C. § 206.  However,
employers may pay tipped employees a reduced amount and claim a
tip credit in accordance with 29 U.S.C. § 203(m).  For an
employer such as S&P to utilize the tip credit, it must provide
tipped employees with the following information:

> 1)   the amount of cash wage the employer is
> paying a tipped employee, which must be at
> least $2.13 per hour;
>
> 2)   the additional amount claimed by the
> employer as a tip credit, which cannot
> exceed $5.12 (the difference between the
> minimum required cash wage of $2.13 and the
> current minimum wage of $7.25);

2

> 3)    that the tip credit claimed by the
> employer cannot exceed the amount of tips
> actually received by the tipped employee;
>
> 4)    that all tips received by the tipped
> employee are to be retained by the employee
> except for a valid tip pooling arrangement
> limited to employees who customarily and
> regularly receive tips; and
>
> 5)    that the tip credit will not apply to
> any tipped employee unless the employee has
> been informed of these tip credit
> provisions.

(Department of Labor Fact Sheet #15: Tipped Employees Under the
FLSA. (Doc. No. 54-4, Ex. C) at 1-2); see also Perez v. Lorraine
Enters. Inc., 769 F.3d 23, 27 (1st Cir. 2014) ("This notice
provision is strictly construed and normally requires that an
employer take affirmative steps to inform affected employees of
the employer's intent to claim the tip credit.")

The plaintiffs contend that S&P impermissibly applied a tip
credit towards the minimum hourly wage rate paid to S&P
employees and paid these employees one and one-half times the
tipped minimum wage, rather than one and one-half times the
statutory minimum wage, for hours worked over 40 per week.
Thus, the plaintiffs allege that when S&P employees work
overtime, "they are paid less than what is statutorily required
because defendants pay servers one and one-half (1½) times the
tipped minimum wage, rather than the statutory minimum wage, for
all hours worked over forty hours per workweek."  (Complaint

3

("Compl.") (Doc. No. 1) ¶ 46.)  Also, plaintiffs contend that
S&P "established and imposed an unlawful tip pool upon servers
at S&P . . . requiring them to pay a percentage of their earned
gratuities to non-tipped employees."  (Memo in Supp. of
Plaintiffs' Mot. for Conditional Cert. (Doc. No. 54-1) ("Pls.
Memo") at 5.)  The plaintiffs claim that up to seven percent of
their daily tips were distributed to non-tipped workers,
including kitchen staff and managers.

The defendants assert that, at all times since at least
June 20, 2013, S&P has paid S&P employees wages in an amount
equal to the then-applicable minimum wage for employees under
Connecticut law for all hours worked, less the then-applicable
tip credit allowable under Connecticut law.  The defendants also
assert that, at all times since at least June 20, 2013, S&P has
paid overtime compensation to S&P employees for hours worked in
excess of 40 in a work week using an hourly rate under
Connecticut law, less the then-applicable tip credit allowed
under Connecticut law.

According to the defendants, "S&P verbally informs servers
of its intention to include tip income when calculating wages."
(Declaration of Jeremy Socha (Doc. No. 62-1, Ex. 1) ("Socha
Decl.") ¶ 12.)  The defendants assert that, "[a]s a matter of
practice, S&P initially informs servers of the tip credit during
training but also does so at other times during employment."

4

(Id. ¶ 13.)  The defendants claim that their intent to do so is reflected in the S&P Employer Handbook.  The defendants assert that no S&P employee has been required to remit a percentage of his or her tips to any tip pool nor distribute tips to the kitchen staff, but rather, that any distribution of tips to the kitchen staff was "done voluntarily."  (Id. ¶ 9.)

Shortly after S&P received notice of the instant lawsuit, it notified current S&P employees.  Beginning in October 2016, 28 current S&P employees agreed with S&P in writing to relinquish any claims that they were owed additional monies, tips or compensation for services or hours worked.  Of those 28 S&P employees, 19 agreed to accept a specific monetary payment in exchange for relinquishing any such claims, and nine employees did so without accepting any monetary payment.

## II.  LEGAL STANDARD

The FLSA authorizes an aggrieved employee to bring a collective action "on behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of an action and their opportunity to opt-in as represented plaintiffs.  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).  "In determining whether to exercise this discretion in an appropriate case[ ], the district courts of this Circuit

appear to  have coalesced around a two-step method . . . ."
Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010).

First, a plaintiff must make "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the [FLSA]." Strauch v. Computer Scis. Corp., No. 3:14CV956 JBA, 2015 WL 3727804, at *2 (D. Conn. June 9, 2015) (internal citations omitted). "The focus of this inquiry, however, is not on whether there has been an actual violation of law . . . ." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Second, the court must, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. At the second stage, an action "may be 'de-certified' if the record reveals that [the plaintiffs who have opted in] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." Id.

At this first stage, the "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995). "In a FLSA exemption case, plaintiffs accomplish this by making some showing that 'there are other

6

employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Myers, 624 F.3d at 555.  "[I]t may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." Damassia v. Duane Reade, Inc., No. 04 CIV. 8819(GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).

The burden on the plaintiffs to demonstrate they are victims of a common policy or plan that violated the FLSA is "not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'"  Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  "The plaintiff may adduce evidence through its own pleadings, affidavits, and declarations, including any hearsay statements contained therein." Chhab v. Darden Restaurants, Inc., No. 11 CIV. 8345 NRB, 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013).  But this "modest factual showing" cannot be satisfied simply by "unsupported assertions." Myers, 624 F.3d at 555.

7

**III. DISCUSSION**

The defendants contend that the plaintiffs and the other S&P employees are not "similarly situated" because "individual questions regarding voluntariness and the receipt of actual notice are inescapable . . . ." (Defs.' Memo. in Opp. to Pls.' Mot. for Conditional Cert. (Doc. No. 62) ("Opp. Memo") at 9.) The defendants cite to, among other cases, Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 472 (S.D.N.Y. 2010), for the proposition that the "factual variances in plaintiffs' and potential opt-in plaintiffs' experiences" preclude conditional certification. (Opp. Memo at 10.)

Before certifying a FLSA collective action, "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits . . . ." Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220 (D. Conn. 2003). Where a "detailed factual analysis" is required with respect to each potential opt-in plaintiff, conditional certification is inappropriate. Diaz v. Elecs. Boutique of Am., Inc., No. 04-CV-0840E(SR), 2005 WL 2654270, at * 4 (W.D.N.Y. Oct. 17, 2005). In Bennett v. Hayes Robertson Grp., Inc., the court refused to conditionally certify a class where it was alleged that the defendants "employed a unified policy of deducting $3.00 per

8

shift from its tipped employees, i.e., servers, hostesses, and
bartenders, that Plaintiffs allege had the effect of bringing
Plaintiffs' and others similarly-situated's wages below the
minimum wage."  880 F. Supp. 2d 1270, 1278 (S.D. Fla. 2012)
(emphasis in original).  The court found conditional
certification inappropriate because "the record evidence related
to the alleged 'tip credit' policy raises several individualized
issues that render the group unmanageable as a collective
class."  Id. at 1285.

Here, the court is not satisfied that there is a basis to
conclude that questions common to the potential group of
plaintiffs would predominate a determination of the merits with
respect to either the question of whether S&P satisfied the
requirements for taking a tip credit, or the question of whether
S&P required servers to share a portion of their tips with non-
tipped workers.

As to the first question, two of the three named plaintiffs
provide a declaration that addresses this question.  Each
states, in substance, that he was not provided the information
S&P was required to give him as a prerequisite to utilizing the
tip credit.  See (Declaration of James Stebbins (Doc. No. 54-2,
Ex. A) ("Stebbins Decl.") ¶ 6) ("During my employment at S&P
Oyster Company, I was never notified that I would be paid less
than the full minimum wage rate because I was receiving tips or

9

that a tip credit would be taken against my hourly pay.  I was also never informed of the amount S&P Oyster Company was claiming as a tip credit.").  (Declaration of Daniel Clark (Doc. No. 54-3, Ex. B) ("Clark Decl.") ¶ 6) (same).  Stebbins and Clerk further state that neither was "aware of any tipped work[er] at S&P Oyster Company who received notification of a tip credit."  (Clark Decl. ¶ 6; Stebbins Decl. ¶ 6.)  There is no declaration by either the third named plaintiff or the additional tipped employee who has opted in.

On the other hand, S&P's General Manager, whose responsibilities include supervision of training of employees, has submitted a declaration directly rebutting the statements by Stebbins and Clark.  The General Manager states that S&P initially informs servers about the tip credit during training, but also does so at other times. He provides a copy of the training program to support this statement.  He states that this information is conveyed verbally.[1]  The mere fact that Stebbins and Clark are not aware of any tipped employee who received notification from management of a tip credit is not particularly probative under the circumstances.

In light of the foregoing, the court concludes that to

---

[1] He also states that the information is included in the employee handbook and the defendant submits a copy of several handbooks. It is not readily apparent to the court where this information is to be found in those documents.

10

resolve this question, it would have to conduct an individualized inquiry with respect to each server to determine what was addressed during his or her training and with respect to any subsequent occasions on which the required information was purportedly verbally conveyed to that server.

As to the second question, the plaintiffs contend, "there is no question that Defendants violated the FLSA by requiring servers to share a portion of their gratuities with non-tipped workers. (Pls. Memo at 5.) The declarations submitted by Stebbins and Clark state that they were required to share a portion of their tips with non-tipped workers:

> 7. During my employment as a server at S&P Oyster Company, I was required to turn a portion of my tips over to the manager on duty at the end of each shift. I was required to turn over to S&P Oyster Company an amount of my tips equal to approximately between five and seven percent of my gross sales each day. At the end of each shift, the manager on duty told each server exactly how much money he or she was required to turn over from his or her earned tips.
> 8. The tip money servers turned over to S&P Oyster Company was then redistributed by management to other employees including non-tipped employees including cooks, expediters, managers, and dishwashers.
> 9. I was not given the option to not participate in this tip pool and was not given discretion as to the amount I handed over to managers. I am not aware of any server who was given the option to not participate in the tip pool or was given discretion as to the amount he or she handed over to S&P Oyster Company.

11

(Stebbins Decl. ¶¶ 7-9; Clark Decl. ¶¶ 7-9.)

However, S&P has provided copies of agreements with nine employees in which the employees state that they "had a voluntary agreement with the Company about tips." (Opp. Memo, Ex. D). Again, the mere fact that Stebbins and Clark are not aware of any tipped employee whose experience differed from theirs is not particularly probative.

In light of the foregoing, the court concludes that to resolve this question, it would have to conduct an individualized inquiry with respect to each server to determine whether he or she was required to share a portion of his or her gratuities with non-tipped employees.

Consequently, this case is one where "questions common to a potential group of plaintiffs would [likely not] predominate a determination of the merits . . . ." Mike, 274 F. Supp. 2d at 220.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification Pursuant to Section 216(b) of the Fair Labor Standards Act, for Court-Authorized Notice to Similarly Situated Persons, and for Expedited Discovery (Doc. No. 54) is hereby DENIED.

12

It is so ordered.

Signed this 1st day of September, 2017, at Hartford,

Connecticut.

                        /s/ AWT
                    Alvin W. Thompson
                 United States District Judge